ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 07 2011

at _____ o'clock and _____ min. _____ M.
SUE BEITIA, CLERK

HENDERSON GALLAGHER & KANE
A Law Corporation

J. PATRICK GALLAGHER    3417-0
Topa Financial Center
745 Fort Street, Suite 1550
Honolulu, Hawaii 96813
Tel. No. (808) 531-2023

Attorneys for Plaintiff
GEMINI INSURANCE COMPANY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GEMINI INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>FLEETWOOD ALUMINUM )<br>PRODUCTS, INC., )<br>)<br>Defendant. )<br>_____ ) | CIVIL NO. CV11 00143 SOM KSC<br>(Contract)<br><br>**PLAINTIFF GEMINI INSURANCE<br>COMPANY'S COMPLAINT FOR<br>DECLARATORY JUDGMENT;<br>EXHIBITS "1" - "6"; SUMMONS** |

## PLAINTIFF GEMINI INSURANCE COMPANY'S
## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff GEMINI INSURANCE COMPANY, by and

through its attorneys, Henderson Gallagher & Kane, for its Complaint for

Declaratory Judgment against Defendant above-named, alleges and avers as

follows:

## PARTIES

1.     Plaintiff GEMINI INSURANCE COMPANY ("GEMINI") is, and was at all relevant times herein, a company organized under the laws of the State of Delaware with its principal place of business in Connecticut.

2.     Defendant FLEETWOOD ALUMINUM PRODUCTS, INC., ("FLEETWOOD") is, and was at all relevant times herein, a California corporation engaged in business in the State of Hawaii.

## JURISDICTION AND VENUE

3.     Jurisdiction exists in this Court pursuant to the provisions of 28 U.S.C. Section 1332 inasmuch as there is diversity of citizenship and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.     This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. Section 2201, for purposes of determining an actual controversy between the parties.

5.     Venue in this jurisdictional district is proper under 28 U.S.C. Section 1391(a)(2), because all or a substantial part of the events giving rise to the claims at issue, as described herein, occurred within the District of Hawaii, and the underlying actions to which this action seeks declaratory judgment addressing the

insurance coverage rights and obligations related thereto are filed and pending

within the District of Hawaii, *i.e.* in Hawaii State Circuit Court.

## NATURE OF ACTION

      6.     This is an action by GEMINI, an insurance carrier, seeking a

declaration of its rights and duties under a series of four Commercial General

Liability insurance policies it issued to FLEETWOOD (collectively, the "Gemini

Policies"). GEMINI hereby requests that this Court declare and adjudge that

GEMINI does not have a duty to defend and/or indemnify Defendants under the

Gemini Policies, with respect to claims asserted against Defendants in the

following underlying civil actions captioned: The Association of Apartment

Owners of 1450 Young Street, et al. v. Waldron Ventures, et al., Civil No. 08-1-

1359-07 VSM (the "1450 Young Street Action"), and The Association of

Apartment Owners of 1448 Young Street, et al. v. Waldron Ventures, et al., Civil

No. 09-1-1031-05 RAN (the "1448 Young Street Action"), pending in the Circuit

Court of the First Circuit, State of Hawaii (collectively, the "Underlying

Actions").

## BACKGROUND

      7.     FLEETWOOD is engaged in the business of manufacturing

aluminum and vinyl windows and doors. The Underlying Actions allege that

FLEETWOOD manufactured and distributed the window systems that were installed in a construction project that included two high-rise condominiums, a common parking garage, as well as the surrounding common areas located at 1448 and 1450 Young Street, Honolulu Hawaii (the "PROJECT").

## A.   <u>The 1450 Young Street Action</u>

8.    On July 7, 2008, the Association of Apartment Owners of 1450 Young Street and others (collectively, "AOAO 1450 Young Street") filed a Complaint in the 1450 Young Street Action against FLEETWOOD and others.

9.    On December 21, 2009, AOAO 1450 Young Street filed a First Amended Complaint in the 1450 Young Street Action.

10.   A true and correct copy of the First Amended Complaint filed in the 1450 Young Street Action on December 21, 2009, is attached hereto and made a part hereof as Exhibit "1".

11.   In the First Amended Complaint, AOAO 1450 Young Street alleges in relevant part:

> ¶ 14   *On or about July 10, 1998, construction was completed on the PROJECT located at 1450 Young Street, Honolulu, Hawaii . . .*
>
> . . .
>
> ¶ 17   *After occupancy, and over a period of time, PLAINTIFFS noted conditions in the direct applied finish systems (DEFS),* **window**

*systems*, *exterior concrete, masonry surfaces, roofing systems and drainage systems . . . (emphasis added)*

¶ 18.  *The conditions reported to Defendants or their agents include but are not limited to water infiltration as a result of multiple building system failures and serious flooding due to inadequate drainage in the area between and around the buildings.*

¶ 19.  *The building system failures and other deficiencies are the direct and proximate consequence of contractor deviations from the project manual, construction details, plans and specifications, failure to accomplish the requirements of the "general conditions" of the construction contract by [the general contractor] and substandard deviations from manufacturers installation guidelines and industry standards for materials chosen, design, construction, construction management, supervision, and construction observation by the design professionals as well as Defendant[]. . . FLEETWOOD. . . .*

¶ 20.  *Defendants had full and complete control of the development of the PROJECT and each of them knew, or in the exercise of due diligence should have known through their employees and/or agents and/or contractor and/or subcontractors, prior to the issuance of the Certificate of Completion, about the existence and cause of the defects in the PROJECT and that it was foreseeable that the defects would more likely than not result in economic damages and losses to PLAINTIFFS.*

¶ 21.  *All defects and their causes were latent and their existence, cause and remedy were uniquely within the knowledge of Defendants and were unknown to PLAINTIFFS who were not able to understand or comprehend the full extent or the existence of defects and the necessity of repairs until after hiring professionals to investigate the design, construction, materials and methods employed by Defendants in the creation and development of the PROJECT.*

¶ 22.  *Defects exist in the design and construction of the PROJECT infrastructure, including but not limited to site preparation, earthwork, drainage, concrete pavement, concrete curbs gutters and sidewalks that also result in water infiltration into the lobby areas of both 1448 Young Street and 1450 Young Street, plus flooding of the area between the buildings.*

¶ 23.  *Said defects have and will continue to result in damages and injury to PLAINTIFFS including but not limited to flooding, increased maintenance expenses, health and safety access problems to owners, their guests, and the general public and the cost to remedy and repair the defects.*

. . .

¶25.  *The underlying facts of the exact causes of certain defective conditions in the PROJECT are not yet known to PLAINTIFFS because the problems are latent, hidden from view and can only be fully understood by destructive investigation and testing.*

¶ 26  *Despite the fact that the Defendants and each of them knew that PLAINTIFFS and the purchasers of individual apartments at this PROJECT would be more likely than not to suffer the expense of performing the repairs necessary to correct the underlying deficiencies at the PROJECT, as well as unreasonably increased maintenance costs and resultant loss of market value in the individual units, they intentionally acted individually and in consort to prevent disclosure of the true facts to PLAINTIFFS in order to protect themselves from liability and to increase sales and profits from sales of apartments.*

¶ 27  *Defendant[] . . . FLEETWOOD . . . or their sub-contractors improperly and or negligently constructed the improvements in the PROJECT, utilized means, methods and materials that fell below the standard of practice in the construction industry thereby breaching their duties in contract, and other duties, to PLAINTIFFS and to Defendant DEVELOPER and/or DOE DEFENDANTS and failed to construct the improvements, according to reasonable building practices, failing to use proper materials and/or means and methods of construction*

*and/or failing to build according to the plans and specifications.*

. . .

¶ 33.   *The numerous design and construction defects must be corrected and repaired to provide PLAINTIFFS, apartment purchasers and subsequent purchasers with the reasonable expected residential, recreational and financial benefits from the apartments and the PROJECT.*

¶ 34.   *All of the defects and deficiencies in the PROJECT as alleged herein cause damage to other property.*

¶ 35   *The defects alleged herein may result in a loss of quiet enjoyment, diminution of the market value of the apartments and/or require costly repairs for which Plaintiff BOARD is entitled to recover damages in amounts to be proved at trial from Defendants on behalf of individual apartment owners.*

¶ 36.   *The Defendants and each of them had a duty to PLAINTIFFS, apartment purchasers and owners, and/or a duty to others, for which PLAINTIFFS are third-party beneficiaries with a recognized right of recovery that is appropriate as a remedy in this proceeding.*

¶ 37.   *The Defendants and/or DOE DEFENDANTS and each of them breached their respective duties to PLAINTIFFS or to others for which PLAINTIFFS are third-party beneficiaries, in contract, law and/or in equity.*

¶38.   *As a direct and proximate result of the acts and omissions of Defendants . . . , PLAINTIFFS were lulled into not hiring independent consultants to investigate the problems for a long period of time and have suffered damages and losses, and resulting damages and losses for breach of duties and agreements, in contract and tort, at law and in equity, for which PLAINTIFFS are entitled to a recovery of compensatory, consequential, general and special damages in amounts to be proven at trial.*

12.    In the 1450 Young Street Action, AOAO 1450 Young Street asserts

the following claims for relief: (a) breach of contract and tort; (b) breach of

express and implied warranties; (c) unfair and deceptive trade practices; (d)

fraudulent concealment; (e) UCC Article II - H.R.S. Section 490:2-200 et seq; and

(f) post-occupancy claims.

13.    In Count III, titled "Breach of Contract and Tort", AOAO 1450

Young Street alleges:

> ¶ 43. *Defendant[] . . . FLEETWOOD. . . assumed contractual*
> *obligations in the design and construction of the PROJECT*
> *which were intended for the benefit of the purchasers of units*
> *and the Plaintiff AOAO.*

> ¶ 44. *The purchasers of units and the PLAINTIFFS have claims*
> *against Defendant[] . . . FLEETWOOD . . . for the damages*
> *that flow from the defective design and construction because*
> *the defects constitute a breach of contract.*

> ¶ 45. *Defendants are liable to pay PLAINTIFFS for all of the losses*
> *and damages that flow from the defective design and*
> *construction of the PROJECT.*

. . .

> ¶ 49. *By failing to cause problems to be corrected, or to disclose*
> *defects to purchasers of apartment, PLAINTIFFS or others,*
> *Defendants breached their duties in tort and contract and are*
> *thereby responsible to PLAINTIFFS for all of PLAINTIFFS'*
> *losses and damages in this lawsuit.*

14.    In Count IV, titled "Breach of Express and Implied Warranties",

AOAO 1450 Young Street alleges:

8

> ¶ 52.  *The above-described conduct of Defendants . . . constitutes a breach of express and/or implied warranties of fitness and/or warranties of habitability and/or marketability and/pr breach of material warranty and/or construction warranty and/or warranty of reasonable workmanship, design and materials.*

15.   Count V, titled "Unfair and Deceptive Trade Practices", AOAO 1450

Young Street alleges:

> ¶ 50.  *The above-described conduct of DEVELOPER and/or DOE DEFENDANTS constitutes unfair and/or deceptive trade practices pursuant to Hawaii Revised Statutes, Section 480-2 in that Defendants intentionally withheld important knowledge about defects that have caused significant diminution in the market value of the units at the PROJECT and has resulted in purchasers of apartments and/or PLAINTIFFS suffering the costs and inconvenience or repairing the defects and damages to their property.*

16.   In Count VII, titled "UCC Article II - H.R.S. Section 490:2-200 *et seq.",* AOAO 1450 Young Street alleges:

> ¶ 65.  *The window systems, roofing systems and exterior finish systems have failed and thus breach the implied warranty and the protections afforded to PLAINTIFFS under the provisions of H.R.S. 490:2-200 et seq. and specifically H.R.S. 490:2-314 et. seq.*

17.   Although FLEETWOOD is only named as a defendant or possibly

referenced in Counts III, IV, V, and VII, AOAO 1450 Young Street seeks a

finding of joint and several liability as to all damages sought in the 1450 Young

Street Action.

9

18.    The relief sought by AOAO 1450 Young Street includes punitive damages.

**B.    The 1448 Young Street Action**

19.    On May 4, 2009, the Association of Apartment Owners of 1448 Young Street and others (collectively, "AOAO 1448 Young Street") filed a Complaint in the 1448 Young Street Action against FLEETWOOD and others.

20.    On July 17, 2009, AOAO 1448 Young Street filed a First Amended Complaint in the 1448 Young Street Action.

21.    On June 23, 2010, AOAO 1448 Young Street filed a Second Amended Complaint in the 1448 Young Street Action.

22.    A true and correct copy of the Second Amended Complaint filed in the 1448 Young Street Action on June 23, 2010, is attached hereto and made a part hereof as Exhibit "2".

23.    In the Second Amended Complaint, AOAO 1448 Young Street alleges in relevant part:

> ¶ 15   *On or about May 18, 1999, construction was completed on the PROJECT located at 1448 Young Street, Honolulu, Hawaii . . .*
>
> . . .
>
> ¶ 18   *After occupancy, and over a period of time, PLAINTIFFS noted conditions in the direct applied finish systems (DEFS),* **window systems**, *exterior concrete, masonry surfaces, roofing systems and drainage systems that were reported to Defendant*

*DEVELOPER to investigate, and determine if defects in design and/or construction existed and to make necessary repairs. (emphasis added)*

¶ 19   *The conditions reported to Defendants or their agents include but are not limited to water infiltration as a result of multiple building system failures, deterioration in the Parking Garage and serious flooding due to inadequate drainage in the area between and around the buildings.*

¶ 20.  *The building system failures and other deficiencies are the direct and proximate consequence of contractor deviations from the project manual, construction details, plans and specifications, failure to accomplish the requirements of the "general conditions" of the construction contract by [the general contractor] and substandard deviations from manufacturers installation guidelines and industry standards for materials chosen, design, construction, construction management, supervision, and construction observation by the design professionals as well as Defendant[] . . . FLEETWOOD*

¶ 21.  *Defendants had full and complete control of the development of the PROJECT and each of them knew, or in the exercise of due diligence should have known through their employees and/or agents and/or contractor and/or subcontractors, prior to the issuance of the Certificate of Substantial Completion, about the existence and cause of the defects in the PROJECT and that it was foreseeable that the defects would more likely than not result in economic damages and losses to PLAINTIFFS.*

¶ 22.  *All defects and their causes were latent and their existence, cause and remedy were uniquely within the knowledge of Defendants and were unknown to PLAINTIFFS who were not able to understand or comprehend the full extent or the existence of defects and the necessity of repairs until after hiring professionals to investigate the design, construction, materials and methods employed by Defendants in the creation and development of the PROJECT.*

¶ 23.  *Defects exist in the design and construction of the PROJECT infrastructure, including but not limited to site preparation,*

11

*earthwork, drainage, concrete pavement, concrete curbs gutters and sidewalks that also result in water infiltration into the lobby areas of both 1448 Young Street and 1450 Young Street, plus flooding of the area between the buildings.*

¶ 24.   *Said defects have and will continue to result in damages and injury to PLAINTIFFS including but not limited to flooding, increased maintenance expenses, health and safety access problems to owners, their guests, and the general public and the cost to remedy and repair the defects.*

¶ 25.   *Defendant[] . . . FLEETWOOD . . . and/or their subcontractors failed to properly design and construct the areas of the PROJECT involved in the allegations contained herein.*

¶26.   *The underlying facts of the exact causes of certain defective conditions in the PROJECT are not yet known to PLAINTIFFS because the problems are latent, hidden from view and can only be fully understood by destructive investigation and testing.*

¶ 27   *Despite the fact that the Defendants and each of them knew that PLAINTIFFS and the purchasers of individual apartments at this PROJECT would be more likely than not to suffer the expense of performing the repairs necessary to correct the underlying deficiencies at the PROJECT, as well as unreasonably increased maintenance costs and resultant loss of market value in the individual units, they intentionally acted individually and in consort to prevent disclosure of the true facts to PLAINTIFFS in order to protect themselves from liability and to increase sales and profits from sales of apartments.*

¶ 28   *Defendant[] . . . FLEETWOOD . . . or their sub-contractors improperly and or negligently constructed the improvements in the PROJECT, utilized means, methods and materials that fell below the standard of practice in the construction industry thereby breaching their duties in contract, and other duties, to PLAINTIFFS and to Defendant DEVELOPER and/or DOE DEFENDANTS and failed to construct the improvements,*

> *according to reasonable building practices, failing to use*
> *proper materials and/or means and methods of construction*
> *and/or failing to build according to the plans and*
> *specifications.*
> . . .

¶ 30.  *The numerous design and construction defects must be*
*corrected and repaired to provide PLAINTIFFS, apartment*
*purchasers and subsequent purchasers with the reasonable*
*expected residential, recreational and financial benefits from*
*the apartments and the PROJECT.*

¶ 31.  *All of the defects and deficiencies in the PROJECT as alleged*
*herein cause damage to other property.*

¶ 32  *The defects alleged herein may result in a loss of quiet*
*enjoyment, diminution of the market value of the apartments*
*and/or require costly repairs for which Plaintiff BOARD is*
*entitled to recover damages in amounts to be proved at trial*
*from Defendants on behalf of individual apartment owners.*

¶ 33.  *The Defendants . . . had a duty to PLAINTIFFS, apartment*
*purchasers and owners, and/or a duty to others, for which*
*PLAINTIFFS are third-party beneficiaries with a recognized*
*right of recovery that is appropriate as a remedy in this*
*proceeding.*

¶ 34.  *The Defendants . . . breached their respective duties to*
*PLAINTIFFS or to others for which PLAINTIFFS are third-*
*party beneficiaries, in contract, law and/or in equity.*

¶35.  *As a direct and proximate result of the acts and omissions of*
*defendants . . . PLAINTIFFS were lulled into not hiring*
*independent consultants to investigate the problems for a long*
*period of time and have suffered damages and losses, and*
*resulting damages for breach of duties and agreements, in*
*contract and tort, at law and in equity, for which PLAINTIFFS*
*are entitled to a recovery of compensatory, consequential,*
*general and special damages in amounts to be proven at trial.*

13

24.    In the 1448 Young Street Action, AOAO 1448 Young Street alleges

the following claims for relief: (a) breach of contract and tort; (b) breach of

express and implied warranties; (c) unfair and deceptive trade practices; (d)

fraudulent concealment; and (e) UCC Article II - H.R.S. Section 490:2-200 et seq.

25.    In Count III, titled "Breach of Contract and Tort", AOAO 1448

Young Street alleges:

> ¶ 41.   *The purchasers of units and the PLAINTIFFS have claims*
> *against Defendant[] . . . FLEETWOOD . . . for the damages*
> *that flow from the defective design and construction because*
> *the defects constitute a breach of contract to which*
> *PLAINTIFFS [are] Third-Party beneficiaries.*

> ¶ 42.   *Defendants are liable to pay PLAINTIFFS for all of the losses*
> *and damages that flow from the defective design and*
> *construction of the PROJECT.*
> . . .

> ¶ 45.   *By failing to cause problems to be correct, or to disclose*
> *defects to purchasers of apartment, PLAINTIFFS or others,*
> *Defendants breached their duties in tort and contract and are*
> *thereby responsible to PLAINTIFFS for all of PLAINTIFFS'*
> *losses and damages in this lawsuit.*

26.    In Count IV, titled "Breach of Express and Implied Warranties",

AOAO 1448 Young Street alleges:

> ¶ 47.   *The above-described conduct of Defendants . . . constitutes a*
> *breach of express and/or implied warranties of fitness and/or*
> *warranties of habitability and/or marketability and/or breach*

14

> *of material warranty and/or construction warranty and/or warranty of reasonable workmanship, design and materials.*

27.   In Count V, titled "Unfair and Deceptive Trade Practices", AOAO 1448 Young Street alleges:

> ¶ 50. *The above-described conduct of DEVELOPER and/or DOE DEFENDANTS constitutes unfair and/or deceptive trade practices pursuant to Hawaii Revised Statutes, Section 480-2 in that Defendants intentionally withheld important knowledge about defects that have caused significant diminution in the market value of the units at the PROJECT and has resulted in purchasers of apartments and/or PLAINTIFFS suffering the costs and inconvenience or repairing the defects and damages to their property.*

28.   In Count VI, titled "Fraudulent Concealment", AOAO 1448 Young Street alleges:

> ¶ 54 *The above-described conduct of Defendants . . . involved a repeated and concerted effort to conceal from prospective purchasers and from purchasers who complaint about defects, the true facts that were known to these Defendants as alleged herein, to the extent known for the purpose of avoiding financial liability for necessary and reasonable repairs that the purchasers were entitled to as a matter of law.*
>
> . . .
>
> ¶ 57. *The conduct as alleged herein was willful, wanton, intentional and knowing, and is behavior that demonstrates a criminal indifference to the consequences to PLAINTIFFS and the homeowners at the PROJECT.*

29.     In Count VIII, titled "UCC Article II - H.R.S. Section 490:2-200 *et seq.*", AOAO 1448 Young Street alleges:

> ¶ 60. *The window systems, roofing systems and exterior finish systems have failed and thus breach the implied warranty and the protections afforded to PLAINTIFFS under the provisions of H.R.S. 490:2-200 et seq. and specifically H.R.S. 490:2-314 et. seq.*

30.     AOAO 1448 Young Street seeks a finding of joint and several liability as to all damages sought in the 1448 Young Street Action.

31.     The relief sought by AOAO 1448 Young Street includes punitive damages.

## THE GEMINI POLICIES

32.     GEMINI issued to FLEETWOOD a Commercial General Liability insurance policy under policy number VCGP003981, for the policy period of 06/30/2002 to 06/30/2003.

33.     A true and correct copy of the Gemini Policy No. VCGP003981 is attached and made a part hereof as Exhibit "3".

34.     GEMINI issued to FLEETWOOD a Commercial General Liability insurance policy under policy number VCGP006786, for the policy period of 06/30/2003 to 06/30/2004.

35.   A true and correct copy of the Gemini Policy No. VCGP006786 is attached and made a part hereof as Exhibit "4".

36.   GEMINI issued to FLEETWOOD a Commercial General Liability insurance policy under policy number VCGP009129, for the policy period of 06/30/2004 to 06/30/2005.

37.   A true and correct copy of the Gemini Policy No. VCGP009129 attached and made a part hereof as Exhibit "5".

38.   GEMINI issued to FLEETWOOD a Commercial General Liability insurance policy under policy number VCGP011067, for the policy period of 06/30/2005 to 06/30/2006.

39.   A true and correct copy of the Gemini Policy No. VCGP011067 attached and made a part hereof as Exhibit "6".

40.   FLEETWOOD is the named insured under Gemini Policy Nos. VCGP003981, VCGP006786, VCGP009129 and VCGP011067 (collectively, the "Gemini Policies").

41.   The Gemini Policies recite the same insuring agreement under *COMMERCIAL GENERAL LIABILITY FORM* (Form CG 00 01 07 98), *SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY*, which provides in relevant part:

17

1. *Insuring Agreement*
    a. *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . .*

    b. *This insurance applies to "bodily injury" and "property damage" only if:*
        (1) *The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and*
        (2) *The "bodily injury" or "property damage" occurs during the policy period.*
    . . .

42.   The Gemini Policies, under *COMMERCIAL GENERAL LIABILITY FORM* (Form CG 00 01 07 98)*, SECTION V - DEFINITIONS*, contain the same definitions of "bodily injury" and "property damage", and provide in relevant part:

    3.   *"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.*
    . . .

    13.  *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*
    . . .

    17.  *"Property damage" means:*

18

a. *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

b. *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

<u>COUNT I</u>
## LIABILITY COVERAGE IS NOT APPLICABLE BECAUSE THERE IS NO "BODILY INJURY" OR "PROPERTY DAMAGE"

43.   GEMINI realleges and incorporates herein the allegations contained in paragraphs 1 through 42 as though fully alleged herein.

44    The Gemini Policies afford Liability Coverage only for the damages for which an insured is legally liable because of "bodily injury" or "property damage" caused by an "occurrence".

45.   In the Underlying Actions, it is alleged that the alleged construction defects have caused AOAO 1450 Young Street and AOAO 1448 Young Street to sustain damages including the "significant diminution in the market value of the units", "loss of market value", and "economic . . . losses".  (See Exhibit 1, ¶¶ 20, 26, 35, 50; Exhibit 2, ¶¶ 21, 27, 32, 50).

46.   Under Hawaii law, "economic loss", which includes loss of earnings and impaired earning capacity and diminution in property value, does not constitute "bodily injury" or "property damage".

19

47.    The alleged "diminution in value of property", "loss of market value", and "economic . . . losses" do not constitute "bodily injury" or "property damage".

48.    By reason thereof, GEMINI is entitled to a declaration from this Court that Liability Coverage under the Gemini Policies is not applicable to the claims against FLEETWOOD, and GEMINI therefore does not have a duty to defend and/or indemnify FLEETWOOD in the Underlying Actions.

**COUNT II**
**LIABILITY COVERAGE IS NOT APPLICABLE BECAUSE**
**THERE IS NO "OCCURRENCE"**

49.    GEMINI realleges and incorporates herein the allegations contained in paragraphs 1 through 48 as though fully alleged herein.

50.    The Gemini Policies afford Liability Coverage only for the damages for which an insured is legally liable because of "bodily injury" or "property damage" caused by an "occurrence".

51.    Under Hawaii law, there is no "occurrence" where an insured commits an intentional act or omission that results in damages that were expected or reasonably foreseeable.

52.    Under Hawaii law, alleged defective construction work, which gives rise to contractual and contract-based tort claims, does not constitute an "occurrence" in a Commercial General Liability insurance policy.

20

53.    In the Underlying Actions, it is alleged that"[d]efects exist in the design and construction of the PROJECT infrastructure, including but not limited to site preparation, earthwork, drainage, concrete pavement, concrete curbs gutters and sidewalks that also result in water infiltration into the lobby areas of both 1448 Young Street and 1450 Young Street, plus flooding of the area between the buildings."  (See Exhibit 1, ¶ 22, Exhibit 2, ¶ 23).

54.    It is further alleged in the Underlying Actions that FLEETWOOD "or their sub-contractors improperly and or negligently constructed the improvements in the PROJECT, utilized means, methods and materials that fell below the standard of practice in the construction industry thereby breaching their duties in contract, and other duties, to PLAINTIFFS . . ." (See Exhibit 1, ¶ 27, Exhibit 2, ¶ 28).

55.    It is further alleged in the Underlying Actions that FLEETWOOD "assumed contractual obligations in the design and construction of the PROJECT" such that FLEETWOOD is liable to AOAO 1450 Young Street and AOAO 1448 Young Street "for the damages that flow from the defective design and construction because the defects constitute a breach of contract." (See Exhibit 1, ¶¶ 43, 44, Exhibit 2, ¶¶ 41, 42 ).

21

56.     The construction defect allegations contained in the Underlying

Actions arise from the contractual relationships between the parties.  As such,

neither the breach of contract claims, nor the contract-based tort claims constitute

an "occurrence" within the meaning of the Gemini Policies.

57.     That alleged damages, namely "water infiltration" and "flooding",

are reasonably foreseeable consequences of the alleged defective construction

work performed in breach of contract, and do not give rise to an occurrence.

58.     If "bodily injury" or "property damage" is alleged in the Underlying

Actions, the "bodily injury" or "property damage" was not caused by an

"occurrence".

59.     By reason thereof, GEMINI is entitled to a declaration from this

Court that Liability Coverage under the Gemini Policies is not applicable to the

claims against FLEETWOOD in the Underlying Actions, and GEMINI therefore

does not have a duty to defend and/or indemnify FLEETWOOD in such actions.

## COUNT III
## LIABILITY COVERAGE IS EXCLUDED UNDER THE
## "CONTRACTUAL LIABILITY" EXCLUSION

60.     GEMINI realleges and incorporates herein the allegations contained

in paragraph 1 through 59 as though fully alleged herein.

22

61.    The Gemini Policies, under *COMMERCIAL GENERAL LIABILITY*

*FORM* (Form CG 00 01 07 98), *SECTION I - COVERAGES, COVERAGE A*

*BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions,* contain

the "Contractual Liability" exclusion, which provides in relevant part:

> *This insurance does not apply to:*
> *. . .*
>
> **b.  Contractual Liability**
> *"Bodily injury" or "property damage" for which the*
> *insured is obligated to pay damages by reason of the*
> *assumption of liability in a contract or agreement . . .*

62.    The "Contractual Liability" exclusion of the Gemini Policies excludes

Liability Coverage for "bodily injury" or "property damage" for which the insured

is obligated to pay damages by reason of assumption of liability in a contract.

63.    To the extent that the allegations of the Underlying Actions allege

that FLEETWOOD assumed liability to pay damages pursuant to an agreement,

for example with the developer of the Project or the installer of window systems

manufactured by FLEETWOOD, Liability Coverage for the alleged damages in

the Underlying Actions is excluded pursuant to the "Contractual Liability"

exclusion of the Gemini Policies.

64.    By reason thereof, GEMINI is entitled to a declaration from this

Court that Liability Coverage under the Gemini Policies is not applicable to the

23

claims against FLEETWOOD in the Underlying Actions, and GEMINI therefore

does not have a duty to defend and/or indemnify FLEETWOOD in such actions.

### COUNT IV
### LIABILITY COVERAGE IS EXCLUDED UNDER
### THE "DAMAGE TO YOUR PRODUCT" EXCLUSION

65.    GEMINI realleges and incorporates herein the allegations contained

in paragraph 1 through 64 as though fully alleged herein.

66.    The Gemini Policies, under *COMMERCIAL GENERAL LIABILITY*

*FORM* (Form CG 00 01 07 98), *SECTION I - COVERAGES, COVERAGE A*

*BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions,* contain

the "Damage to Your Product" exclusion, which provides in relevant part:

> *This insurance does not apply to:*
> *. . .*
>
> *k.  **Damage to Your Product***
> *"Property damage" to "your product" arising out*
> *of it or any part of it.*

67.    The Gemini Policies, under *COMMERCIAL GENERAL LIABILITY*

*FORM* (Form CG 00 01 07 98), *SECTION V - DEFINITIONS*, contain the

definition of "your product", which provides in relevant part:

> *20. "Your product" means:*
> *a.  Any goods or products, other than real property,*
> *manufactured, sold, handled, distributed or disposed of*
> *by:*

24

> *(1)  You;*
> *(2)  Others trading under your name; or*
> *(3)  A person or organization whose business or assets you*
> *      have acquired; and*
> *b.  Containers (other than vehicles), materials, parts of*
> *    equipment furnished in connection with such goods or*
> *    products.*
>
> *"Your product" includes:*
> *a.  Warranties or representations made at any time with respect*
> *    to the fitness, quality, durability, performance or use*
> *    of "your" product; and*
> *b.  The providing of or failure to provide warnings or*
> *    instructions.*

68.    The "Damage to Your Product" exclusion precludes Liability

Coverage for "property damage" to the insured's product, which includes goods or

products manufactured, sold, and distributed by the insured.

69.    FLEETWOOD is alleged in the Underlying Actions to have

manufactured and distributed the window systems on the Project. (See Exhibits 1

and 2, ¶ 9).

70.    To the extent the Underlying Actions seek to recover for property

damage to the insured's products, namely the window systems, the "Damage to

Your Product" exclusion bars coverage.

71.    If "property damage" is alleged to FLEETWOOD's products in the

Underlying Actions, then the "Damage to Your Product" exclusion applies

and Liability Coverage for "property damage" is excluded.

25

72.    By reason thereof, GEMINI is entitled to a declaration from this

Court that Liability Coverage under the Gemini Policies is not applicable to the

claims against FLEETWOOD in the Underlying Actions, and GEMINI therefore

does not have a duty to defend and/or indemnify FLEETWOOD in such actions.

**COUNT V**
**LIABILITY COVERAGE IS EXCLUDED UNDER**
**THE "PRE-EXISTING DAMAGES" EXCLUSION ENDORSEMENT**

73.    GEMINI realleges and incorporates herein the allegations contained

in paragraph 1 through 72 as though fully alleged herein.

74.    Gemini Policy No. VCGP003981 contains an endorsement, *PRE-*

*EXISTING DAMAGE EXCLUSION* (Form AD 66 40 05 96) ("Pre-Existing

Damages Endorsement"), which provides in relevant part:

> *This insurance does not apply to:*
> 1. *Any damages arising out of or related to "bodily injury" or*
>    *"property damage", whether such "bodily injury" or "property*
>    *damage" is known or unknown,*
>       (a)   *which first occurred prior to the inception date of this*
>           *policy (or the reactive date of this policy, if any; whichever*
>           *is earlier); or*
>       (b)   *which are, or are alleged to be, in the process of occurring*
>           *as of the inception date of the policy (or the reactive date of*
>           *this policy, if any; whichever is earlier) even if the*
>           *"occurrence" continues during this period.*
>
> . . .
>
> *We shall have no duty to defend any insured against any loss, claim,*
> *"suit", or other proceeding alleging damages arising out of or*
> *related to "bodily injury" or "property damage" to which this*
> *endorsement applies.*

75.   Gemini Policy No. VCGP003981 was effective for the policy period 06/30/2002 to 06/30/2003.  (See Exhibit 3).

76.   Construction of the property located at 1450 Young Street is alleged to have been completed on July 10, 1998.  (See Exhibit 1, ¶ 14).  Construction of the property located at 1448 Young Street is alleged to have been completed on May 18, 1999.  (See Exhibit 2, ¶ 15).

77.   In its First Amended Complaint at Paragraph 17, AOAO 1450 Young Street asserts, "After occupancy and over a period of time, PLAINTIFFS noted conditions in . . . window systems . . ."  The Second Amended Complaint of AOAO 1448 Young Street makes a similar allegation at Paragraph 18.

78.   If the Underlying Actions allege damages that constitute "bodily injury" or "property damage" caused by an "occurrence" within the policy period, to the extent that such damages first occurred prior to or were in the process of occurring on the inception date of Gemini Policy No. VCGP003981, the Pre-Existing Damages Endorsement applies to exclude Liability Coverage.

79.   By reason thereof, GEMINI is entitled to a declaration from this Court that Liability Coverage under the Gemini Policies is not applicable to the claims against FLEETWOOD in the Underlying Actions, and GEMINI therefore does not have a duty to defend and/or indemnify FLEETWOOD in such actions.

## COUNT VI

### LIABILITY COVERAGE IS EXCLUDED UNDER THE "CONTINUOUS OR PROGRESSIVE DAMAGE CLAIMS" EXCLUSION ENDORSEMENT

80.    GEMINI realleges and incorporates herein the allegations contained in paragraph 1 through 79 as though fully alleged herein.

81.    Gemini Policy Nos. VCGP006786, VCGP009129 and VCGP011067 contain an endorsement, *EXCLUSION - CONTINUOUS OR PROGRESSIVE DAMAGE CLAIMS (*Form VE 6640 04 03) ("Continuous or Progressive Damages Endorsement"), which provides:

> *This endorsement modifies insurance provided under the following:*
>
> *COMMERCIAL GENERAL LIABILITY COVERAGE PART*
> *PRODUCTS/COMPLETED OPERATIONS LIABILITY*
> *COVERAGE PART*
>
> *In the event of any claim against the insured for bodily injury, property damage, personal injury or advertising injury which is or is alleged to be continuing in nature, this policy shall not apply to any such claim if the damage or any portion of it began or is alleged to have begun prior to the date that this policy becomes effective. This exclusion shall apply whether or not the cause of the alleged damages was known prior to the effective date of the policy.*
>
> *We have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages arising out of or related to "bodily injury" "property damage", "personal injury" or "advertising injury" to which this exclusion applies.*

82.   Gemini Policy Nos. VCGP006786, VCGP009129 and VCGP011067 were effective for the following policy periods: 06/30/2003 to 06/30/2004, 06/30/2004 to 06/30/2005, and 06/30/2005 to 06/30/2006.  (See Exhibits 4-6).

83.   Construction of the property located at 1450 Young Street is alleged to have been completed on July 10, 1998.  (See Exhibit 1, ¶ 14).  Construction of the property located at 1448 Young Street is alleged to have been completed on May 18, 1999.  (See Exhibit 2, ¶15).

84.   Both the AOAO's of 1450 Young Street and 1448 Young Street allege conditions were observed and reported with regard to the window systems, "[a]fter occupancy, and over a period of time."

85.   If the Underlying Actions allege damages that constitute "bodily injury" or "property damage" caused by an "occurrence" within the policy period, to the extent that such damages first occurred prior to the effective dates of Gemini Policy Nos. VCGP006786, VCGP009129 and VCGP011067, then the Continuous or Progressive Damages Endorsements apply to bar Liability Coverage.

86.   By reason thereof, GEMINI is entitled to a declaration from this Court that Liability Coverage under the Gemini Policies is not applicable to the claims against FLEETWOOD in the Underlying Actions, and GEMINI therefore does not have a duty to defend and/or indemnify FLEETWOOD in such actions.

<u>COUNT VII</u>
## LIABILITY COVERAGE IS EXCLUDED UNDER
## THE "INSTALLATION EXCLUSION" ENDORSEMENT

87.    GEMINI realleges and incorporates herein the allegations contained

in paragraph 1 through 86 as though fully alleged herein.

88.    The Gemini Policies contain an endorsement, *INSTALLATION*

*EXCLUSION* (Form VE 01800703), which provides:

> *This endorsement modifies insurance provided under the following:*
>
> *COMMERCIAL GENERAL LIABILITY COVERAGE PART*
> *PRODUCTS/COMPLETED OPERATIONS LIABILITY*
> *COVERAGE PART*
>
> *It is agreed that this policy does not apply to any "bodily injury",*
> *"property damage" or "personal injury" arising out of or related to*
> *the installation by anyone of any product manufactured, sold or*
> *distributed by the named insured.*

89.    The Underlying Actions allege that FLEETWOOD manufactured and

distributed the window systems on the Project.  (<u>See</u> Exhibits 1 and 2, ¶9).

90.    The Underlying Actions allege that Alii Glass & Metal, Inc.  ("ALII")

"did supply and install building materials and components that were incorporated

into the construction of the PROJECT, including but not limited to doors and

window systems . . . (<u>See</u> Exhibits 1 and 2, ¶7).

91     On information and belief ALII was an authorized installer of

FLEETWOOD's window systems.

92.     To the extent that the Underlying Actions allege"bodily injury",

"property damage" or "personal injury" arising out of or related to the installation

by ALII or anyone of any product manufactured, sold or distributed by

FLEETWOOD, the Installation Exclusions applies and precludes coverage.

93.     By reason thereof, GEMINI is entitled to a declaration from this

Court that Liability Coverage under the Gemini Policies is not applicable to the

claims against FLEETWOOD in the Underlying Actions, and GEMINI therefore

does not have a duty to defend and/or indemnify FLEETWOOD in such actions.

**COUNT VIII**
**LIABILITY COVERAGE IS EXCLUDED UNDER THE**
**"PUNITIVE DAMAGES" EXCLUSION ENDORSEMENT**

94.     GEMINI realleges and incorporates herein the allegations contained

in paragraph 1 through 93 as though fully alleged herein.

95.     The Gemini Policies contain an endorsement, *PUNITIVE DAMAGE*

*EXCLUSION* (Form AD 66 01 01 95) ("Punitive Damages Exclusion

Endorsement"), which provides in relevant part:

> *This endorsement modifies insurance provided under the following:*
>
> > *COMMERCIAL GENERAL LIABILITY COVERAGE*
> > *PART*
> > *OWNERS AND CONTRACTORS PROTECTIVE*
> > *LIABILITY COVERAGE PART*
> > *PRODUCTS/COMPLETED OPERATIONS LIABILITY*
> > *COVERAGE PART*

> *It is agreed that the insurance afforded by this policy does not apply to punitive or exemplary damages awarded against the Insured.*

96.     The Punitive Damages Exclusion Endorsement excludes Liability Coverage for punitive or exemplary damages.

97.     The Underlying Actions seek punitive damages in Paragraph 2 of their respective prayers for relief.

98.     Liability Coverage for the alleged punitive damages is excluded under the Punitive Damages Exclusion Endorsement.

99.     Liability Coverage for the alleged punitive damages is barred by statute under HRS § 431:10-240.

100.    By reason thereof, GEMINI is entitled to a declaration from this Court that Liability Coverage under the Gemini Policies is not applicable to the punitive damage claims against FLEETWOOD in the Underlying Actions, and GEMINI therefore does not have a duty to defend and/or indemnify Defendants in such actions.

## COUNT IX
## NO COVERAGE OBLIGATION

101.    GEMINI realleges and incorporates herein the allegations contained in paragraphs 1 through 100 as though fully alleged herein.

102.   An actual controversy of a justiciable nature exists between GEMINI and FLEETWOOD, wherein GEMINI contends that the Gemini Policies afford no coverage benefits or obligations to FLEETWOOD.

103.   On the basis of the foregoing, declaratory relief is necessary and proper to determine the rights, obligations and liabilities, if any, which exist as to said parties under the Gemini Policies issued to FLEETWOOD.

WHEREFORE, GEMINI prays for judgment in its favor and against FLEETWOOD as follows:

A.   That a declaratory judgment be issued by this Court in favor of GEMINI that there is no coverage under the Gemini Policies and GEMINI therefore does not have a duty to defend and/or indemnify FLEETWOOD in the Underlying Actions.

B.   That GEMINI be entitled to recover from FLEETWOOD some or all of the costs expended in having to bring this action.

C.   That GEMINI be entitled to such other and further relief as the Court deems just and proper under the circumstances of this case.

DATED: Honolulu, Hawaii, _____ MAR - 7 2011 _____.

J. PATRICK GALLAGHER
Attorney for Plaintiff
GEMINI INSURANCE COMPANY

33